**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

TED DAVISON,            )
                               )
          Petitioner,     )
                               )
      v.                  )     Case No. 4:11CV00750 AGF
                               )
TROY STEELE,          )
                               )
          Respondent.   )

## MEMORANDUM AND ORDER

This matter is before the Court on the petition of Missouri state prisoner Ted Davison for a writ of habeas corpus pursuant to 28 U.S.C. ' 2254. On March 1, 2006, Petitioner was convicted by a jury of first-degree murder and first-degree robbery. He was sentenced to consecutive terms of life imprisonment without parole and 20 years, respectively. For habeas relief, Petitioner raises the following claims: (1) defense counsel was constitutionally ineffective for allegedly telling him that the state would use an unrelated charge of sexual misconduct to impeach him if he decided to testify; (2) the trial court improperly denied Petitioner the opportunity to cross-examine two of the state's witnesses regarding pending criminal charges they allegedly faced; (3) the trial court improperly sent demonstrative exhibits and a ruler to the jury during deliberations; (4) there was insufficient evidence to support Petitioner's conviction of first-degree murder; (5) defense counsel was constitutionally ineffective for failing to adduce exculpatory evidence, failing to object when the trial court allegedly told the jury that it needed to reach a verdict before they left for the day, failing to use a peremptory

challenge to remove a certain juror from the venire panel, failing to fully investigate and to call Petitioner and another individual as witnesses, and failing to investigate another individual's whereabouts on the day in question; and (6) Petitioner's constitutional rights were violated based upon the cumulative effect of the errors in his trial. For the reasons set forth below, habeas relief shall be denied.

## BACKGROUND

The evidence presented at trial, viewed in the light most favorable to the verdict, established the following:

In December 2002, Petitioner owned a pawn shop where his then 16-year-old son, Eric Davison, worked for him. Petitioner discussed with his son and another individual, Pat Crouch, robbing the victim, who was a wholesale jeweler who sold jewelry to pawn shops. On the morning of December 10, 2002, Petitioner told his son that they (Petitioner and his son) were going to rob the victim that day when the victim came to the store. When the victim arrived, Petitioner's son hit the victim in the back of the head with an aluminum baseball bat. Petitioner dragged the victim into a back storage room, grabbed a flashlight, and began hitting the victim on the side of the head with it. Petitioner then picked up a shotgun and slammed it into the victim's forehead, killing him. Petitioner and his son then took the victim's suitcases of jewelry to Petitioner's apartment.

Petitioner and his son returned to the pawn shop, cleaned the victim's blood from the carpet and walls, and Petitioner loaded the victim's body into the back of Petitioner's truck. Petitioner and his son then drove to a wooded area and disposed of the victim's body in the woods, covering it with leaves and sticks. A few days later, Petitioner had his

son and nephew replace the carpet in the storage room where the victim was killed. Later that week, Petitioner drove his son and nephew to the wooded area where the body had been left. They dug a hole in the ground and buried the victim's body. On June 1, 2003, the police found the victim's body based upon information from a confidential informant. Petitioner was arrested the following day.

Petitioner filed a pretrial motion to disclose any deals the state may have made with several witnesses. The prosecutor asserted that there were no deals offered in exchange for the witnesses' testimony. At trial, defense counsel attempted to cross-examine two of the state's witnesses, Charles Crump and Crouch, regarding pending criminal charges they allegedly faced. Crump had testified that while he was watching a television news report with Petitioner and his son in March or April 2003 about the missing victim in the case, Petitioner said in a joking tone, "we did that," but Crump did not take the comment seriously. Crump also testified that he had prior convictions for drug possession, misdemeanor domestic assault, and stealing. He testified that all of the cases had been disposed of and that he was not promised anything in exchange for his testimony. (Resp. Ex. A at 299-302.)

On cross-examination, Crump testified that he did not inform the police about Petitioner's admission to the murder until after he was arrested on the drug possession charge in September 2003. After reviewing his prior convictions to which Crump had testified on direct examination, defense counsel asked Crump if in connection with the drug possession charge, he had been arrested with three-fourths of a pound of marijuana. The prosecutor objected to any further inquiry behind the charge itself on the ground that

such inquiry was "not permitted," and the objection was sustained. At a bench conference, the trial court told Petitioner's counsel that he "may be able to argue an inference that [Crump] received favorable treatment, but the details of the disposition are not permitted." Crump then testified that the drug possession case had been resolved two or three months before Petitioner's trial and further testified that it was not resolved in exchange for his testimony. *Id*. at 305, 310-12.

Crouch testified about the conversation he had with Petitioner in December 2002 about robbing the victim. Crouch stated that his testimony was not made in exchange for any deals with the state. On cross-examination, defense counsel asked Crouch if he had been arrested on January 6, 2003. The prosecutor objected, stating that the state had informed the defense that no charges had been filed related to that arrest. The trial court sustained the objection. At a bench conference, the trial court told defense counsel that such an arrest was unusable for impeachment purposes because it occurred prior to the discovery of the body and could not have any relevance. *Id*. at 387-99.

Defense counsel continued cross-examining Crouch, and then asked Crouch if he had been arrested on January 31, 2004. The state objected to any inquiry beyond the arrest itself without evidence that any charges were filed. Defense counsel argued that he should be entitled to draw the inference that Crouch was not charged in exchange for his testimony. The objection was sustained. *Id*. at 401-02.

A medical examiner testified for the state that the victim died of at least two head injuries (apparently referencing the blow to the back of the head and the blow to the front of the head), which likely in combination contributed to the victim's death. The medical

4

examiner used a plastic skull to illustrate his testimony, placing marks on the skull where the victim was hit.  The skull was admitted into evidence as a demonstrative exhibit without objection.  *Id.* at 493.  The shotgun identified as the murder weapon was also admitted into evidence without objection.  *Id.* at 492.

Petitioner did not testify in his own defense.  At the close of evidence, outside the presence of the jury, the trial court asked Petitioner whether it was his own decision not to testify.  The trial court ascertained that Petitioner was both aware that he had the right to testify, and that he had made the decision himself not to do so, as follows:

> THE COURT:  Before we conclude the evidence finally, Mr. Davison, it is come upon me to advise you that under the law you have the right to testify in your own defense, if you so choose.  Do you understand that?
> MR. DAVIS:  Yes, Your Honor.
> THE COURT:  Do you understand you also have the right to refrain from testifying, and no one can force you to testify in this trial?
> MR. DAVISON:  Yes, Your Honor
> THE COURT:  Have you discussed those options with your attorneys?
> MR. DAVISON:  Yes, I have.
> THE COURT:  And in consultation with them, I take it you have chosen not to testify?
> MR. DAVISON:  Yes.
> THE COURT:  And I assume you discussed the pros and cons of that decision with your attorneys?
> MR. DAVISON:  Yes, Your Honor.
> THE COURT:  And you have made a decision not to testify; is that correct?
> MR. DAVISON:  Yes.
> THE COURT:  Do you understand that if they have made a recommendation to you one way or the other, that they do not have the final say in that issue?
> MR. DAVISON:  (No response.)
> THE COURT:  Let me rephrase that.  You understand that the choice to testify or not is, in the final analysis, yours and yours alone?
> MR. DAVISON:  Yes.

THE COURT:  Do you understand that if your attorneys have recommended that you not testify, you still may do so, if you choose to do so?

MR. DAVISON:  Yes, I understand that.

THE COURT:  Having understood each of those things, is it now still your decision not to testify in your own defense?

MR. DAVISON:  Yes, Your Honor.

THE COURT:  Very well.  The Court will so note for the record that the defendant has made an intelligent waiver of his right to testify.

*Id*. at 504-06.  Defense counsel argued in closing argument that the state failed to meet its burden of proof and that the evidence showed that Petitioner's son killed the victim.

The jury retired to deliberate at 5:55 p.m. on March 1, 2006.  At 6:08 p.m., the jury sent a note inquiring, "Can we have the shotgun?  If not, can you measure the butt of the gun or the end of the stock?  Can we also have the skull?"  The court proposed responding to the jury in writing, "The shotgun, with the action incapacitated, is yours for 15 minutes only.  Remember the skull was for demonstration only, and there was no attempt to use it to scale.  Yardstick provided."  Petitioner's counsel objected to sending the shotgun on the ground that it was "too prejudicial," and the plastic skull on the ground that the skull was "not representative at all" and the jury was "obviously . . . intending to measure the things that were never even testified to as being precise measurements."  The trial court overruled the objection and sent the three items to the jury with the proposed note.  *Id*. at 550-51.

In its instructions to the jury, the Court told the jury that it must determine the facts "only from the evidence and the reasonable inferences to be drawn from the evidence."  (Resp. Ex. B at 24.)  And each verdict director directed the jury to make its findings "from the evidence."  *Id.* at 32, 34.  At 9:18 p.m., the jury returned its guilty

verdict.  Petitioner's motion for a new trial, which the trial court denied, did not challenge sending the yardstick to the jury.  (Resp. Ex. B at 48-57.)

**Direct Appeal**

On direct appeal, Petitioner raised two arguments.  He first argued that the trial court abused its discretion in sending the plastic skull, shotgun, and yardstick to the jury room, as this permitted the jurors to conduct improper experiments and become unsworn witnesses to how the crime occurred.  The appellate court held that the issue of possible experimentation by the jury was not preserved for appeal because that precise argument was not raised in the motion for a new trial challenging the trial court's actions in sending the three items to the jury.  The appellate court held further that there was no basis for reversal on plain error review because Petitioner's "mere speculation" that jurors may have experimented with the exhibits in a jury room was insufficient to show that the trial court abused its discretion in sending the items to the jury.  (Resp. Ex. F at 4.)

Petitioner's second argument on direct appeal was that the trial court improperly limited his cross-examination of Crump and Crouch by preventing him from inquiring into pending charges or arrests, which would show a possible motivation to testify favorably for the state.  Petitioner argued that the fact that the charged conduct occurred before the victim's body was discovered was irrelevant to whether leniency was promised in exchange for favorable testimony.  In rejecting this point, the appellate court held that nothing in the record indicated there were any pending charges against Crump or Crouch, noting that there was no dispute that the charges against Crump had been resolved two to three months prior to trial.  In addition, the appellate court stated that Petitioner's trial

counsel did not challenge the state's assertion that no charges had been filed in connection with Crouch's January 2003 arrest or his January 2004 arrest. *Id.* at 6-7.

**State Post-Conviction Proceedings**

The only claim Petitioner raised on appeal from the denial of post-conviction relief was that the motion court erred in rejecting, following an evidentiary hearing, his claim that he was denied the right to testify due to ineffective assistance of defense counsel who did not adequately advise him of his rights.[1] At the hearing on the post-conviction motion, Petitioner testified that he decided not to testify at trial because his counsel informed him that the state would use an unrelated charge of sexual misconduct to impeach him. Petitioner wanted to testify at trial that "there wasn't a robbery, and there wasn't a planned deal. It started out an accident thing that got turned around." (Resp. Ex. H at 7-13.) Defense counsel testified that he had been practicing law since 1981 with approximately 30 percent of his time focused on criminal law. He testified that he did not believe the unrelated charge "played any role in [his] advice" to Petitioner not to

---

[1]  In addition to the claim related to his right to testify, Petitioner, in his amended motion for post-conviction relief asserted that defense counsel was ineffective for failing to call a bloodstain expert to testify that the blood found at the scene of the murder could have been caused by someone shaking blood off his shoes, as Petitioner's son told the police he did; object or request a mistrial when the court allegedly told the jury that it needed to reach a verdict before they left for the day; use a peremptory challenge to strike a certain juror from the venire panel; call an individual, unidentified police officer, and Petitioner as witnesses (with respect to Petitioner, claiming that defense counsel told him that uncharged allegations related to a sexual offense would be used to impeach his credibility if he testified); and eliciting testimony from Petitioner's nephew that Petitioner's son told the nephew that Petitioner hit the victim with the butt of a shotgun. (Resp. Ex. I at 20-40.)

testify. He further testified that his advice to Petitioner not to testify was part of his trial strategy. *Id*. at 31-53.

On this claim, the motion court found that "it is impossible for this Court to believe that counsel of [Petitioner's defense counsel]'s experience and expertise would have told [Petitioner] this alleged [sexual] offense could be used to impeach him." (Resp. Ex. I at 45-46.) In affirming the denial of post-conviction relief, the appellate court deferred to this credibility determination by the motion court. The appellate court also noted that the trial court discussed with Petitioner his right to testify, and that Petitioner stated that he knew the decision whether to testify was his own, and further acknowledged that he could testify even if his counsel recommended that he not do so.

**Federal Habeas Petition**

In his petition for a writ of habeas corpus, Petitioner raises the six grounds set forth above. Respondent argues that federal habeas relief must be denied on procedural grounds with respect to Petitioner's claim that there was insufficient evidence to support his first-degree murder conviction, and with respect to each of Petitioner's ineffective assistance of counsel claims, except for Petitioner's claim that his defense counsel told him that the state would use an unrelated sexual misconduct charge to impeach him, thereby denying Petitioner his right to testify. Respondent argues that all these claims were not raised to the state court of appeals and are thus procedurally defaulted and Petitioner has not established a reason to excuse the default. Respondent argues that Petitioner's claim regarding the "cumulative effect of errors" in his trial is not a legal

basis for habeas relief, and that the state courts' adjudication of the remaining claims was legally and factually reasonable, precluding federal habeas relief on those claims.

## DISCUSSION

### Procedural Default

"Ordinarily, a federal court reviewing a state conviction in a [federal habeas corpus] proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Arnold v. Dormire*, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (citation omitted). For Missouri prisoners, claims that could have been but were not raised on direct appeal or on appeal from the denial of a post-conviction motion are procedurally defaulted. *Moore-El v. Luebbers*, 446 F.3d 890, 897-98 (8th Cir. 2006); *Penton v. Russell*, No. 4:13CV554 HEA, 2014 WL 2095223, at *3 (E.D. Mo. May 20, 2014).

A state prisoner, however, may obtain federal review of a defaulted claim by showing cause for the default and actual prejudice as a result of the constitutional violation, or that he is actually innocent of the crimes for which he was convicted. *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Attorney errors in initial-review collateral proceedings may qualify as cause for a procedural default. *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012). But ineffective assistance of counsel in not raising a claim on appeal from the denial of post-conviction relief does not constitute cause. *Id.* at 1317.

The Court agrees with Respondent that Petitioner's claim that there was insufficient evidence to support his first-degree murder conviction was procedurally

defaulted in state court because he did not raise it in his direct appeal. *See, e.g., Moore-El*, 446 F.3d at 897-98. Petitioner has not shown a basis to excuse the default, and so habeas relief is denied with respect to this claim.

Petitioner's claims of ineffective assistance of counsel, with the exception of the claim related to Petitioner's right to testify, were procedurally defaulted in state court as well, because Petitioner did not raise them on appeal from the denial of post-conviction relief. *See id.* Petitioner has not asserted a basis to excuse the default, so federal habeas relief is denied with respect to these defaulted claims. The Court turns, then, to consider the merits of Petitioner's claims that were not procedurally defaulted.

## **Standard of Review**

Where a claim has been adjudicated on the merits in state court, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that application for a writ of habeas corpus cannot be granted unless the state court's adjudication

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent but arrives at the opposite result. *Strong v. Roper*, 737 F.3d 506, 510 (8th Cir. 2013); *Lockyer v.*

*Andrade*, 538 U.S. 63, 73 (2003). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

"A determination of a factual issue made by a State court shall be presumed to be correct," 28 U.S.C. § 2254(e)(1), and the petitioner "has the burden of rebutting this presumption of correctness by clear and convincing evidence." *Grass v. Reitz*, 749 F.3d 738, 743 (8th Cir. 2014). A state court's credibility findings are owed this same deference. *Id.* at 744.

## Assistance of Trial Counsel/Right to Testify

To prevail on a claim on ineffective assistance of counsel, a habeas petitioner must not only show that counsel's performance was deficient, but must also show that he was prejudiced by his counsel's incompetence. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). To satisfy the prejudice prong, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Kennedy v. Kemna*, 666 F.3d 472, 477 (8th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694). A criminal defendant has the "ultimate authority to make certain fundamental decisions regarding the case, [including] whether to . . . testify in his or her own behalf." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Here, the post-conviction court was faced with conflicting testimony of what transpired between defense counsel and Petitioner with regard to the decision that

Petitioner would not testify, and the court chose to believe defense counsel's version, which would preclude Petitioner's claim. Issues of credibility are left to the discretion of the state courts, and nothing in the record suggests that the state court erred in its determination on this matter. *See Winfield v. Roper*, 460 F.3d 1026, 1035 (8th Cir. 2006) (rejecting a habeas petitioner's claim that counsel prevented him from testifying, where the state court held an evidentiary hearing on the issue and believed counsel's testimony over that of the petitioner); *Washington v. Kemna*, 16 F. App'x 528, 530-31 (8th Cir. 2001) (same).

## Sending Exhibits and Yardstick to the Jury

As noted above, the gun and model skull that were given to the jury during deliberations were exhibits that had been admitted into evidence without objection. "[T]he trial judge is vested with discretion to determine whether exhibits shall be sent to the jury." *United States v. Lewis*, 759 F.2d 1316, 1329 n.6 (8th Cir.1985); *see also United States v. Downen*, 496 F.2d 314, 320 (10th Cir. 1974) ("[I]t is within the discretion of the Trial Court, absent abuse working to the clear prejudice of the defendant, to permit the display of demonstrative or illustrative exhibits admitted in evidence both in the courtroom during trial and in the jury room during deliberations.").

The yardstick, however, was not an exhibit, nor was it directly requested by the jury. The Court takes issue with the state appellate court's reasoning that it was "mere speculation" by Petitioner that the jury conducted any experiments in the jury room. It is true that the jury requested either the shotgun or that the butt of the shotgun be measured, and providing the shotgun itself may well have obviated any use of the yardstick to make

measurements.  But the possibility that the jury did in fact conduct a measuring experiment looms large.

Such experiments could be improper because they introduce evidence outside the trial record into the jury's deliberations, possibly implicating a criminal defendant's constitutional rights to an impartial jury and to confront and cross-examine witnesses against him.  *See, e.g., Ratajczak v. Romanowski*, No. 2:08-cv-10102, 2010 WL 2232340, at *5  (E.D. Mich. June 2, 2010).  The issue to be decided for purposes of habeas relief, however, "is not mere impropriety but whether the experiment introduced extra-record facts which give rise to such a probability of prejudice that the jury verdict must be set aside as inherently lacking in due process."  *Simon v. Kuhlman,* 549 F. Supp. 1202, 1205 (D.C.N.Y. 1982).

Here, the Court concludes that there was not a significant possibility of prejudice to Petitioner, in violation of any of his constitutional rights, especially in light of the trial court's admonition to the jury that the skull was for demonstration purposes only and that there was no attempt to use it to scale.  Accordingly, this claim is rejected.  *See United States v. Wright*, 392 F.3d 1269, 1280 (11th Cir. 2004) (holding that it was not plain error for the judge to provide the jury with a ruler that had not been admitted into evidence, to measure the firearm involved in the charge of possession of a firearm by a felon, since jury viewed the firearm and could estimate its measurements without the advantage of a ruler which merely functioned as a visual aid); *Gray v. Pfister*, ___ F. Supp. 2d ___, WL 6457671, at *7-8 (C. D. Ill. 2013) (holding that even if the jurors' experiment with the murder weapon, seeking to recreate clicking-noise of the gun described by defendant in

his testimony, constituted error, the habeas petitioner was not prejudiced by that conduct, and thus he was not deprived of his right to fair and impartial jury; the gun was admitted as evidence and the trial court was responding to a request for the court to send it back to jury room).

## Limitation on Cross-Examination of Witnesses as to Bias

A defendant has the right under the Sixth Amendment's Confrontation Clause to elicit enough facts about a witness's "possible biases, prejudices, or ulterior motives" to let the jury assess witness credibility. *Davis v. Alaska*, 415 U.S. 308, 316 (1974). "[T]he exposure of a witness's motivation in testifying is a proper and important feature of the constitutionally protected right of cross-examination." *Id*. at 316-17. "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited in engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Yang v. Roy*, 743 F.3d 622, 626 (8th Cir. 2014) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)).

> Even so, this right is not unlimited: a defendant is guaranteed "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. The trial judge retains wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

*Id*. (citations omitted).

Even if a trial court commits error in this regard, to prevail a petitioner must show that the error had a "substantial and injurious effect or influence on determining the jury's verdict." *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

Here both Crump and Crouch denied on the stand that they had testified in return for leniency or promises of leniency by the prosecutor. Defense counsel conducted an effective cross-examination of both Crump and Crouch as to the timing of their prior convictions and charges, sufficient for the jury to assess the credibility of their denials of a deal with the prosecutor, and their credibility in general. Although the trial court may have cut this aspect of the cross-examination of these witnesses too short, and the state appellate court's reasoning regarding the timing of resolution of Crump's charges may have been faulty, a review of the entire record convinces the Court that Petitioner's right to cross-examine Crump and Couch with respect to bias was not violated. *See Yang*, 743 F.3d at 629 (holding that the trial judge's forestalling specific inquiry into the percentage by which two state's witnesses' sentences were reduced by virtue of their plea agreements did not violate the habeas petitioner's Sixth Amendment rights where the petitioner did not show prejudice). Thus this habeas claim is rejected.

**Cumulative Effect**

Lastly, the Court rejects Petitioner's claim that the cumulative effect of all the errors he asserts entitle him to habeas relief. *See Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006) (rejecting a habeas petitioner's argument that the district court erred by individually analyzing prejudice for each claim, and citing cases for the proposition that a habeas petitioner "cannot build a showing of prejudice on a series of errors"); *Scott v.*

*Jones*, 915 F.2d 1188, 1191 (8th Cir.1990) (holding "cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own").

**CONCLUSION**

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court=s assessment of Petitioner=s claims for habeas relief debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. ' 2254(d)(2). *See Miller-El v. Cockrell*, 123 S. Ct. 1029, 1040 (2003) (standard for issuing a Certificate of Appealability) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED t**hat the petition of Ted Davison for a writ of habeas corpus relief is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not be issued in this case.

A separate Judgment shall accompany this Memorandum and Order.


*Audrey G. Fleissig*
_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of August, 2014.